The next matter, number 181686, Algonquin Gas Transmission LLC v. Weymouth Conservation Commission at all. In this appeal, the Town of Weymouth is asking you to place appropriate limits on the ability of a natural gas company to use Federal law to deprive the Town's Conservation Commission of its power to protect Weymouth's wetlands resources. The central issue in this case is the scope of Federal preemption under Section 717F of the Natural Gas Act. Therefore, I'd like to put the statute of limitations issue aside for the moment and focus on the two key questions of the preemption analysis. First, what has preemptive power? And second, what may be preempted? On the first question, what has preemptive power, Weymouth argues that preemption arises not from the Natural Gas Act in and of itself and not from a FERC certificate conditional on the State approval required by the Coastal Zone Management Act, but only from a FERC certificate for which that approval has been obtained. As we sit here today, Massachusetts Office of Coastal Zone Management has not yet given the approval that the Coastal Zone Management Act expressly requires before the issuance of a Federal permit affecting the Coastal Zone. Why does that render the case unright at this point? Because of the claims that the Natural Gas Company has made. The Natural Gas Company's that either the Natural Gas Act was preemptive from the get-go as soon as the Commission issued its decision, or in the alternative, that when the FERC certificate was issued in January 17, it had preemptive effect. Algonquin has never conceded that it's even possible that the FERC certificate doesn't yet have preemptive effect. Therefore, under Algonquin's complaint, that case is right. You've got sort of a catch-22 argument, don't you, here? You've got an argument that, okay, FERC has issued a certificate. One of the conditions of the certificate is that Massachusetts under the Coastal Zone Managing Act takes certain action. Massachusetts, through that act, has said they've done everything except they're not going to finally act until the preemption decision in this case is decided. And then you're saying that there's no action in this case because they haven't acted yet. So it's set up a nice catch-22, which makes no sense. That is how Algonquin frames the fact. How is it not like that? Because Weymouth has, in fact, never taken the position that the Coastal Zone Management certification should not go forward, you know, purely due to the... But that's what the state regulator has said. They're not issuing... The only reason they're not issuing the final document that would satisfy this condition is because of your proceeding. I wanted to get... That's not specifically true. It was just the... Well, how isn't that true? So the Wetlands Appeal was stayed. The Wetlands Appeal is two proceedings removed from the federal law. It poses a six-month time limit on CZM to make its concurrence determination. Algonquin has voluntarily agreed to continually extend the time that CZM has to make its determination. It could have forced the issue by saying to CZM, hey, this is not... It's never been established that CZM was even holding up its determination because the Wetlands Appeal hadn't been resolved. But Algonquin could have forced the issue by saying, you shouldn't hold up your determination until the Wetlands Appeal has been resolved. So you're saying that the state may be wrong and the state should have just granted the certificate? Should have just deemed the certificate condition satisfied or taken the action that would satisfy it? I'm arguing... Well, so a couple things. One, Algonquin... Algonquin's dispute is ultimately with the state, but Algonquin did not make the state a party to this action. So a state and a municipality can get together and they can set up this wonderful little trap that we'll do everything. We've got no basis for turning it down. It's all good, except we're not going to pull the trigger until the town proceeding is over. And then you argue the town proceeding can't be preempted because the state hasn't yet pulled the trigger. That's what seems to be going on here. So there are many reasons why that... I certainly agree that if that were the situation, that would be untenable. So there are a number of reasons why that's not actually the situation. One thing, in addition to the various remedies that Algonquin has to break that alleged catch-22, one thing that I want to... One option that it had was to pursue the normal avenue of the permit under the ordinance. But the problem... I mean, Algonquin brought this problem on itself by just assuming... As soon as the denial was issued, essentially Algonquin took the position that it could just disregard that denial just because it was an applicant for a certificate of public convenience and necessity. And so as soon as that denial was issued, it treated it as irrelevant and having no force whatsoever. And it's that approach that Algonquin took of not pursuing the normal avenues of appeal, even though it did not yet have a certificate. That is what... Why should Algonquin pursue avenues of appealing a decision of a body when it views that body's intervention into the matter as preempted by federal law? It's entitled legally to test the preemption question. It's certainly a colorable question here. Yes, and it absolutely could have brought... So you're not suggesting it has to go through a whole series of state remedies in a proceeding that it contends from the very outset is a preemptive proceeding? Right. So a couple things. Sorry. The fundamental issue is that... So one fundamental issue is that at the time that Algonquin declined to appeal in any way, even to go to federal court and ask for a determination, the denial, at that time there was no certificate. And so what Algonquin is saying is that even before FERC issues a certificate, the natural... It is only subject to regulation by FERC under the Natural Gas Act. But that gets you back to Judge Cabot's catch-22. The only reason that there is no certificate is that proceedings are being held up pending the resolution of this preemption question. Well... And the resolution in the D.C. Circuit, which is now done, et cetera. Right. And I would note that the Welland's proceeding has actually now almost concluded based on the District Court's decision, so just as an aside. But, I mean, so Algonquin had multiple ways to avoid this catch-22. One way was up until the time that it actually received a FERC certificate to act in every way like this, to pursue the normal avenues of appeal, which would actually be less friendly to municipalities, because actually letting it proceed this way is good, that you allow the state to say, well, maybe Weymouth has got something here. Maybe they're not preempted. Maybe they've got some other argument. So instead of pulling the trigger and judging it for self, we'll give Weymouth a shot to hang on, and we have this proceeding. It's when you then turn around and say, oh, no, but you can't even now adjudicate whether we're preempted or not, that we get into this catch-22 situation. But suppose you were right on preemption, okay, putting aside this effectiveness of the certificate. It would be good for you that the state held off pulling the trigger until you could have your shot. So, I mean, that's true. I guess my ultimate point is that it is not Weymouth's position that Weymouth's denial of the ordinance should hold up the CZM concurrence. We have never taken that position. We would not take that position. But we just don't think that the proper way to resolve the catch-22 is to have a district court rule that the ordinance against something. Let's look at this more practically. As I understand it, in the certification process, FERC has adjudicated all of the issues that it would ever adjudicate with respect to one of these permits, including the environmental issues that FERC has authority to do it. And it's decided them all. The state has adjudicated under the Coastal Zone Management Act and told us that it's done everything except this one preemption thing that it's holding, which has nothing to do with any of those issues. We know from the D.C. Circuit that FERC's action is sufficiently complete that the D.C. Circuit accepts jurisdiction to hear challenges to those adjudications if you think FERC got the environmental issues wrong. Given all of that, why would we hold up adjudicating whether those decisions by FERC that are now final preempt environmental local ordinances of the type you've got here? So the key thing that I dispute in your scenario is that the coastal zone concurrence is being held up because of the wetlands ordinance. Yes, the state wetlands proceeding before DEP was stayed at the request of DEP wetlands staff per DEP policy because of Algonquin's failure to appeal the denial under the wetlands ordinance. The Massachusetts Office of Coastal Zone Management, there's nothing in the record to say that that office has ever said that the reason that it is holding up its decision is because it's waiting for a decision in the wetlands. So let's go with that for a second. How will their ultimate decision, let's assume they haven't decided on what they can decide, how will that affect whether Weymouth can do what it needs to do? The state could go ahead and say, good to go, we think this is fine, we have nothing to add to what FERC did, you're preempted. Or the state could say, no, we're not going to give our sign-off because we've got this reason over here. Project can't go forward, this case is not even, there's no dispute, it's not right. So it just seems that what you're saying for the reason why we should not find preemption seems disconnected from any underlying connection with the type of environmental issues that are providing the preemptive force in this case, which are FERC's determination of things that Weymouth would like to adjudicate differently. Well, the issue is that under the Coastal Zone Management Act, a federal license is not supposed to be issued for any activity that affects the coastal zone. So it's not necessarily the case that only the enforceable policies under the Coastal Zone Management Act are the only things that should have any effect. Instead, our position is that because of the language of the Coastal Zone Management Act, it would be contrary to the, because Weymouth's jurisdiction over its wetland resources at the site, at the site at which Algonquin is carrying out various pre-construction activities, because those affect the coastal zone, it would be contrary to the express language of the statute to find preemption. Thank you. Good morning, Your Honor. May it please the Court, Jeremy Morrell for APOE Algonquin Gas Transmission. In denying Algonquin a permit under its local wetlands ordinance, Weymouth regulated in a preemptive process and made findings that conflict with first determinations in authorizing the Atlantic Bridge Project. We think the preemption analysis is straightforward under both a field and conflict preemption theory. There was a lot of discussion in the opening argument about the significance of the CZM condition, but our initial argument, and under the field preemption analysis, preemption occurs from the Natural Gas Act itself. Do we need to get to field preemption if we were to decide this conflict preemption? Correct, Your Honor, and I think that follows from this Court's decision in Weaver's Cove, that the Court concluded that conflict preemption was the narrower of the two analyses. As to Justice Souter's question about ripeness, I think Weaver's Cove also analyzes and resolves the ripeness inquiry that we have an obstacle to the project moving forward. And I think the Catch-22 analogy discussed in the opening argument is exactly on point. At APT 760, the Massachusetts CZM regulators, the Coastal Zone Management Regulators, said they quote, cannot complete its review until all applicable permits have been received. Those permits include the state permits that are part of the federally enforceable policy. At APT 574, the town argued to hold up one of those state permits, the Wetlands Permit under the Wetlands Protection Act, on a permanent permit under their local ordinance, and that that part should not move forward until the preemption issue is resolved by this Court. So I think that sequence of events explains the timing of when we brought this suit within 30 days of the presiding officer holding up that state permit and sending us to the federal court to adjudicate the preemption claim. As to the conflict preemption analysis, I think Weaver's Cove marches you straight through it. We have distinct overlap between the factors that FERC considered in authorizing this project and the factors that Weymouth considered in denying the project. That overlap is itself sufficient to establish conflict preemption, but you have more here, which is a denial by the Weymouth Commission. There was some suggestion in Weymouth's reply brief that there was an issue that FERC did not address with respect to wetlands at the station site. That's not accurate. If you look at Act 193, it shows you where FERC specifically addressed wetlands and said, quote, no wetlands will be impacted at the Weymouth site. That was in the certificate order. So I think just as in Weaver's Cove, the overlap and the conflict between the two findings is enough to establish preemption. On the relevance of the CCMA condition, you have a 28-J letter explaining that the D.C. Circuit has now upheld the certificate, and the D.C. Circuit's rationale I think undercuts what I took to be the thrust of Weymouth's argument, which is that you have to deny the certificate of preemptive effect to avoid a conflict with the CCMA. The D.C. Circuit said conditioning construction was sufficient to avoid the conflict. I would be happy to discuss timeliness issues if the court has any questions, but we think conflict analysis or field preemption analysis are both enough to save the day. Thank you very much. I would just like to address a couple things. First, conflict preemption. Even if we think the certificate now has full preemption effect, full preemptive effect, in our view, then the question of whether or not that certificate preempts Weymouth's denial is a factual question that the court needs to resolve. The resolution must necessarily take into account the question of whether the natural gas company has made a reasonable effort to comply with the ordinance, because if the company has not, then the commission's actions cannot be said to, in the language of Lever's Code, stand as an obstacle to accomplishment of Congress's objectives. I also want to note that counsel said that preemption occurs from the Natural Gas Act itself. This is an argument that Weymouth just believes is fundamentally wrong, and yet Algonquin uses it frequently, and so it assumes that even as an ordinance as preempted, we don't think that that is the proper, and that's briefed also in the record, we don't think that that is the balance that Congress intended. That argument goes only to field preemption. They don't make that argument with respect to conflict preemption, which is where this discussion has been centered. Yes, I will. I agree with that, but the district court's decision, in our view, was overbroad in stating that the Natural Gas Act was preemptive. What's our standard of review? I recognize that the standard of review is de novo. Thank you, counsel.